# Mason-Waller Motor Co. v. Holeman.

Oct. 8, 1940.

As Modified on Denial of Rehearing Nov. 26, 1940.

M. L. Blackwell, Judge.

L. C. Flournoy, Jr., and Wheeler & Shelbourne for appellant.

W. Fred Hume for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

The appeal is from a judgment affirming an award of industrial compensation to the widow and infant daughter of Osmond Sylvanus Holeman, commonly called Dick Holeman, a late employee of Mason-Waller Motor Company, of Morganfield. The deceased lived at Sturgis and was killed in an automobile accident on January 20, 1939. The sole question is whether his death arose out of and in the course of his employment.

Holeman was an automobile salesman, working for a salary, and receiving a bonus for an extraordinary number of sales. He was furnished a car by his employer and was free to work where and when he pleased. He had the prospect of selling a truck to one Blue who lived at Clay in Webster County. The night before the accident they made an engagement to meet at Sturgis the next morning at ten o'clock. Blue, however, did not get to Sturgis until about noon. Holeman and two

friends, Claire McGee and John Reynolds, were at Wheatcroft, which is between Sturgis and Clay, about noon. They bought a bottle of gin at Sullinger's saloon and dance hall there. Holeman left the place alone for thirty or forty minutes, saying something about having to see a preacher. He made inquiry as to where Lee Powell, a miner who engaged in preaching, lived, and went to his house but did not see him. It is indicated also that during this interval Holeman may have gone to Clay, though it is doubtful. Upon his return the parties indulged in more drinking and returned to Sturgis, stopping on the way at Vaughn's roadhouse. They went to the "Purity Club" at Sturgis, where they found Blue. Holeman and Blue discussed a trade and came within $25 of closing it. This trip and what was done on it is recited only as a background.

That afternoon Holeman and McGee took the proprietress of the "Purity Club," whose reputation is shown not to have been of the best, and picked up two married women, and the five started out. It was on this excursion that the fatal accident occurred. The question is narrowed as to whether it was a personal joy-ride, disassociated from Holeman's work as an automobile salesman, or whether it was made in the course of his employment and the accident arose out of the employment. The party first stopped at Vaughn's dance hall. They then went on to Sullinger's at Wheatcroft for more dancing and drinking. A bar maid there testified that one of the women was wanting to buy some steak and Holeman said he would get her one at the "Red Front" store at Clay. They went on to Clay and parked the car at that grocery. Holeman was gone a little while and, according to McGee, went into Blue's place of business and returned with some kind of poster. Blue testified that there was no engagement to meet Holeman there and that he had not returned from Sturgis at that time. But there is no reason to suppose Holeman knew he was not there. He had told Blue that morning that if he could place the truck to be taken in the trade before the day was gone he would see him later. Blue had suggested Jennings as a prospect for it. Jennings was the manager of the "Red Front" store above referred to. Holeman had previously talked with him about selling him a truck. Holeman went into the store and bought some meat. While he was being waited on by another

clerk, he asked Jennings if he had bought or traded, and he answered that he had not. He discussed a sale and told Jennings "probably in a few days he might have one for me."

From there the party went to Woodlawn, a short distance beyond Clay, danced, drank and played the slot machine for probably an hour. They then started back to Sturgis, with McGee taking the wheel. On the return they again stopped at Sullinger's roadhouse. As they were leaving, Holeman did not want to get in the car, insisting that he wanted to dance again "with that red-headed woman," one of his party. On the way to Sturgis the automobile ran off the highway against a tree. It was demolished. Holeman was killed and the other four occupants injured. McGee undertook to say that the car was side-swiped by an approaching machine causing him to lose control, but we doubt it.

No one in the car was a prospective customer. But the evidence affords the conclusion that Holeman's purpose in going to Clay late that afternoon was to follow up his two prospects. He was then on the border of a trade with Blue, and if he could dispose of the "take-in" truck to Jennings he could close two deals. Going to the store as a patron not only would please Jennings but afford an opportunity to talk with him about the business, which he did. Holeman had told Blue that he would see him again during the day if he could dispose of the "take-in" truck. Going to see his two prospects was a normal thing for an automobile salesman. A good salesman, such as Holeman was proven to be, never lets go readily but pursues his business diligently.

The case of Woodring v. United Sash & Door Company, 152 Kan. 413, 103 P. (2d) 837, 840, on which the appellant relies, presents quite analogous circumstances, but with the controlling difference that it was therein established that the fatal accident occurred after the employee had finished his business mission, dismissed all further concern about his employer's affairs and was pursuing his own personal course. We think the rule in cases of this class is therein well stated, namely:

"It may be conceded that where a business errand is the purpose of a workman's journey, the social incident of taking a few guests along for the pleasure of their company would not affect his right to

compensation for an injury sustained in the performance of that errand; but where the business errand is finished or abandoned and the workman thereafter sets about the pursuit of his own pleasure or indulgence there is no theory of law or of justice which would impose on his employer the obligation to pay compensation for any injury sustained by the workman under such circumstances.''

Holeman was on duty all the time, in that he had no regular hours and was free to go where and when he pleased in the course of his employment. On this occasion he was using his employer's demonstrator car, although at the time of the accident he had delegated the driving to a stranger. Perhaps he had stepped out from the course of his employment while engaged in drinking at the various saloons, and taking the party along was a personal matter, yet it was proved that he had gone on the journey to Clay in pursuit of his employer's business and was returning therefrom when he was killed. We think, therefore, that there was sufficient evidence to sustain the finding and award of the Workmen's Compensation Board.

Wherefore the judgment is affirmed.